[Cite as *In re Z.P.*, 2017-Ohio-7397.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104395

---

# IN RE: Z.P.
# A Minor Child

## [Appeal by B.J., Father ]

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 14106384

**BEFORE:** Jones, J., McCormack, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 31, 2017

**ATTORNEY FOR APPELLANT**

David Bartos
Bartos & Bartos, L.P.A.
20220 Center Ridge Road, Suite 160
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEES**

**For A.P., Grandmother**

James C. Lanigan
Hahn, Loeser & Parks, L.L.P.
200 Public Square, Suite 2800
Cleveland, Ohio 44114

Andrew S. Pollis
Milton A. Kramer Law Clinic Center
Case Western Reserve University
11075 East Boulevard
Cleveland, Ohio 44106

**For L.P., Mother**

L.P., pro se
4560 Turney Road
Cleveland, Ohio 44105

**For Guardian Ad Litem**

Linda M. Julian
P.O. Box 688
Wickliffe, Ohio 44092

LARRY A. JONES, SR., J.:

{¶1} Appellant, Father, appeals the juvenile court's decision to grant legal custody of Z.P. to appellee, maternal grandmother ("Grandmother"). For the reasons that follow, we reverse and remand for a new trial.

{¶2} The record and transcript reflect the following. Z.P. was born on January 1, 2013. In May 2014, Father filed an application to determine custody and a motion for temporary custody. The same month, Grandmother, who had been caring for Z.P. since birth, filed a motion for custody and a motion to intervene in the case. Grandmother subsequently filed a second motion to intervene and a motion for temporary custody. The court granted Grandmother's motion to intervene. The parties initially agreed that Grandmother would have temporary custody of the child.

{¶3} Z.P. lived with her two half-siblings and Grandmother in a house owned by A.B., who had previously dated Mother, but was not the biological father of any of her children. Mother occasionally lived in the house. Grandmother and A.B. had cared for Z.P. since birth, except for two six-week periods during which Mother took her three children to stay somewhere else. A.B. provided basic needs for Z.P. and her siblings.

{¶4} When Mother was not living with the family, she lived in several different places and Grandmother had concerns about Mother's stability, mental health, and ability to provide for Z.P.'s basic needs. Prior to obtaining temporary custody, Grandmother had a difficult time receiving permission from Mother to take Z.P. to the doctor. Z.P. has special needs.

{¶5} Father was the biological father of Z.P., but not of Mother's other children. He visited with Z.P. often, including overnight and weekend visitation and would take Z.P. to his mother's house, where he lived. His mother was supportive of his relationship with Z.P. but could not provide a permanent home for Z.P. because she lived in senior housing and the child was not allowed to live there long term. During one seven-month period, Father estimated he had Z.P. 43 percent of the time. A.B. agreed that Father took care of Z.P. about that amount of time. After the court awarded temporary custody of Z.P. to Grandmother, Father had weekly visitation from Friday through Monday.

{¶6} In March 2015, the guardian ad litem ("GAL") filed her report and recommendation, recommending that the court award legal custody of Z.P. to Father. The matter proceeded to trial before a magistrate at which the parties proceeded pro se. The magistrate awarded legal custody of Z.P.'s half-siblings to Grandmother; the decision was uncontested.

{¶7} Grandmother testified that Z.P. was 28 months old at the time of trial. Grandmother did not believe Father was suitable to have custody of the child because although Father claimed to have just moved into his own place, Grandmother did not think the house had working utilities and she did not know where the child would sleep or if the father had food for the child. Grandmother believed Father still lived with his mother.

{¶8} Mother testified that she wanted Grandmother to have custody of Z.P. to keep her children living together. Mother claimed Father had mental health problems, was "unstable," did not support the child, did not have stable housing, and had a temper. Mother testified she was "okay" if visitation between Father and Z.P. continued.

{¶9} Father testified he had stable housing. According to Father, "the lights are on," but the gas was not yet hooked up because he had just moved in to his new place. Father testified that he had an appointment with a local agency and the gas should be on in a few days. Father testified he was employed, did not have a criminal history, and had not been treated for mental health issues. Father told the court he would allow Z.P. to see her half-siblings if he was awarded legal custody.

{¶10} The court asked the GAL whether she knew if Father had suitable housing. The GAL told the court that when Father had the child for weekend visitation they would stay at the paternal grandmother's house. The GAL had not yet inspected Father's new house, but "would recommend legal custody to the father pending me going out to see the house."

{¶11} A.B. testified that Grandmother, Mother's children, and sometimes Mother had lived with him since Z.P. was born. He had provided a crib, diapers, and formula for Z.P. and would continue to provide Z.P. with all her basic needs. A.B. thought Father cared for Z.P. about 40 percent of the time and believed it would be a "good idea" if the court granted Grandmother legal custody and Father had shared parenting.

**{¶12}** The magistrate issued a decision finding both Mother and Father unsuitable and granting legal custody of Z.P. to Grandmother. Father and the GAL objected to the magistrate's decision. Father also filed a notice of appeal, but this court dismissed the appeal for lack of a final appealable order. *In re Z.M.P.*, 8th Dist. Cuyahoga No. 103366 (Nov. 10, 2015), motion no. 489487. This court determined that "[t]he trial court did not rule on the guardian ad litem's objections to the magistrate's decision before it entered judgment on July 7, 2015. Therefore, the July 7, 2015 order was not final and appealable." *Id.*

**{¶13}** The trial court subsequently overruled the G.A.L.'s objections and adopted the magistrate's decision.

**{¶14}** Father now appeals, raising two assignments of error for our review:

I. The court erred because the Father's due process rights guaranteed under the Fifth and Fourteenth Amendments of the Constitution were violated by not being able to cross-examine witnesses, fully testify, testify without interruption from other parties, file objections after transcripts were prepared, and by the trial court reviewing transcripts and determining objections Father was not allowed to argue and therefore violated his due process right to prepare a proper record on appeal.

II. The trial court erred in finding Father abandoned, was totally unable to care and support the child or otherwise unsuitable, and said decision was not based upon suitable evidence as a matter of law and said decision was against the manifest weight of the evidence.

**{¶15}** The GAL filed an appellate brief in support of Father.

**Standard of Review**

**{¶16}** A trial court enjoys broad discretion in custody proceedings because custody issues are some of the most difficult and agonizing decisions a trial court must make.

*Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). A trial court's custody determination will not be disturbed unless the court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶17} While the trial court has discretion in custody proceedings, the record must contain sufficient factual evidence to support the court's findings. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 6, citing *In re Schwendeman*, 4th Dist. Washington Nos. 05CA18 and 05CA25, 2006-Ohio-636. We will not reverse a judgment as being against the manifest weight of the evidence when the record contains some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶18} Because legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody, the trial court's standard of review in a legal custody proceeding is preponderance of the evidence, not clear and convincing evidence as in permanent custody proceedings. *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means "evidence that's more probable, more persuasive, or of greater probative value." *In re M.F.*, 5th Dist. Ashland No. 12-COA-036, 2013-Ohio-1755, ¶ 13, citing *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439.

**Applicable Law**

{¶19} R.C. 2151.23(A)(2) grants the juvenile courts "exclusive original jurisdiction to determine the custody of any child not a ward of another court of this state." *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 15. When determining custody between a parent and nonparent, the overriding principle is that parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). A court may not award custody to a nonparent without first making a finding of parental unsuitability — that is, without first determining by a preponderance of the evidence that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus; *Hockstok* at ¶ 16. Thus, as is applicable to the case at bar, the *Perales* test requires that some detriment to the child be shown before he or she is taken away from an otherwise suitable parent. *See Thrasher v. Thrasher*, 3 Ohio App.3d 210, 213, 444 N.E.2d 431 (9th Dist.1981).

{¶20} When considering whether a parent is unsuitable, a trial court must avoid making a determination based "purely upon the 'best interest of the child.'" *In re Kenneth M.*, 6th Dist. Lucas No. L-96-177, 1997 Ohio App. LEXIS 2729, 12 (June 27, 1997).

"A pure best interest test looks to the best custodial situation available for the child and then places the child there. Under *Perales*, parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. * * * Simply because one situation or environment would have been the 'better' situation, does not mean the other is detrimental or harmful to the child."

(Citations omitted.) *Id.,* quoting *In re Porter*, 3d Dist. Marion No. 9-95-43, 1997 Ohio App. LEXIS 2729 (Aug. 19, 1996).

**Due Process Rights**

**{¶21}** In the first assignment of error, Father argues that his due process rights were violated because he was denied the right to cross-examine witnesses, was not allowed to present his side of the facts without interruption from other interested parties, and was not allowed leave to file supplemental objections to the magistrate's objections.

**{¶22}** Juv.R. 27(A) provides that "the juvenile court may conduct its hearings in an informal manner." As mentioned, the parties in this case proceeded pro se. In Ohio, pro se litigants are presumed to have knowledge of the law and of correct legal procedure, and are held to the same standard as all other litigants. *Rocky River v. Collins*, 8th Dist. Cuyahoga No. 103111, 2015-Ohio-4390, ¶ 10. "[P]ro se civil litigants cannot be afforded greater rights than they would have if represented by counsel." *In re S.H.,* 8th Dist. Cuyahoga No. 100911, 2014-Ohio-4476, ¶ 18.

**{¶23}** During trial, Father did not object to the format of the hearing, how testimony was taken, or complain that he was not able to fully testify to the matter. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon

appeal." *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds. & Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975), citing *Snyder v. Stanford*, 15 Ohio St.2d 31, 238 N.E.2d 563 (1968), and *Oney v. Needham*, 6 Ohio St.2d 154, 216 N.E.2d 625 (1966). An appellate court may recognize an error that an appellant waived only if it constitutes plain error. *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.). The Ohio Supreme Court has admonished courts to limit applying the plain error doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *In re T.C.K.*, 4th Dist. Washington No. 13CA3, 2013-Ohio-3583, ¶ 16, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

**{¶24}** We do not find that Father's complaints rise to the level of plain error. Juv.R. 40(C)(2) authorizes magistrates to regulate all proceedings "as if by the court and to do everything necessary for the efficient performance of those responsibilities." In the case at bar, the transcript shows that the magistrate terminated Father's testimony only when Father and Mother began to argue and Father stopped answering the magistrate's questions.

**{¶25}** The hearing itself was understandably contentious. But the witnesses, including Father, often interrupted one another, even during questioning from the magistrate. The magistrate eventually concluded the hearing, stating he was sure he had

heard from everybody and felt the parties were engaging in circular arguments with one another.

**{¶26}** Given the magistrate's discretion to regulate proceedings and the informal nature of the hearing, we do not find that Father's due process rights were violated.

**{¶27}** We also do not find that Father's due process rights were violated because the court denied him leave to file supplemental objections to the magistrate's decision. Father has failed to explain how he was prejudiced by the court's decision or identify what his supplemental objections would have been had he been allowed to file them.

**{¶28}** In light of the above, the first assignment of error is overruled.

**Manifest Weight of the Evidence**

**{¶29}** In the second assignment of error, Father argues that the trial court's decision that he was unsuitable was against the manifest weight of the evidence.

**{¶30}** The magistrate made the following findings, adopted by the trial court, as to why the parents were unsuitable:   Mother was in agreement with the change of custody to Grandmother due to Mother's instability; CCDCFS had prior involvement with the family due to allegations of maternal neglect; Mother had previously pleaded no contest to a domestic violence charge against Father; Father had a history of unstable housing and his current housing lacked working utilities; Father was unemployed when he filed for custody; Father previously resided with his mother in senior housing where the child could not reside; Father was inconsistent in paying child support and had a current arrearage; Father had willfully withheld child support, and Mother had willfully withheld

visitation; a change of custody would cause harm to the child because Father had not had custody of the child for a significant period of time; A.B. had been the primary caregiver and provider for the child since the child's birth; a change in custody was contrary to the child's best interests; and an award of custody to Father would harm the child by separating the child from her siblings.

{¶31} Biological parents have a fundamental liberty interest in the care, custody, and management of their children and a finding of parental unsuitability is not to be made lightly. "The choice of taking custody away from a [biological] parent in favor of a nonparent, albeit a grand[parent], has a very high bar. The issue of unsuitability of the [biological] parent is an extreme burden." *Thompson v. Downing*, 5th Dist. Tuscarawas No. 2011 AP 10 0038, 2013-Ohio-1051, ¶ 19. Here, the trial court found that Father had a history of unstable housing and did not have suitable housing for the child, was inconsistent with child support, was unemployed when he filed for custody, and had not had custody of Z.P. for a significant period of time. We consider each factual contention in turn.

{¶32} The record showed that Father previously lived with his mother and was able to care for Z.P. at his mother's place for short periods of time but could not live there permanently with the child because his mother lived in senior housing that did not allow children to live there permanently. Father secured independent housing shortly before trial. Thus, the record does not support that Father had a "history" of unstable housing. Father's current house lacked working gas, but Father testified that he had an appointment

with a social services agency, would get the gas turned on within the next few days, and he and Z.P. could live with his mother until the gas was working. Further, the GAL testified that she would recommend an award of legal custody to Father once she was able to see his house.

{¶33} The court also found that Father had not consistently paid child support. But both Mother and Father testified that they used child support and visitation as a tool to manipulate the other party. While Mother's refusal to allow Father to see Z.P. does not excuse Father from paying court-ordered child support and he did have an arrearage of $200 at the time of trial, we do not find that alone is reason enough to find him to be an unsuitable parent. The court further found that Father was unemployed when he filed for custody. That fact is not in contention. Father, however, was employed at the time of trial and had been working for approximately four months.

{¶34} Finally, the court stated that Father was unsuitable because he had not had custody of Z.P. "for a significant period of time." Z.P. was born January 1, 2013. Father filed for custody in May 2014, because, according to Father, Mother was unable to care for Z.P. Father agreed to allow Grandmother to have temporary custody of Z.P. and continued to have weekly visitation from Friday through Monday. During one seven-month period, Father estimated he had custody of Z.P. 43 percent of the time. A.B. agreed that Father had custody of Z.P. about that amount of time. Although it is unclear from the record how much Father had "custody" of Z.P. during the 28 months of her life leading up to trial, it appears as though Father cared for his daughter and

exercised his parenting time on a regular basis. Father should not be penalized because he agreed on a temporary custody arrangement that allowed Grandmother to be custodian of the child during the pendency of the custody proceedings. Moreover, we note that the trial court arbitrarily reduced Father's parenting time from approximately 40% to approximately 23% in its order granting legal custody to Grandmother.

{¶35} In our view, competent, credible evidence in the record is lacking to support a claim that legal custody of Z.P. to Father was detrimental to the child based upon Father's housing, employment, nonpayment of child support, or history of custody. As the trial court mentioned during trial, the burden was on Grandmother, who was seeking legal custody of Z.P., to show that Father was unsuitable. The trial court abused its discretion in finding by a preponderance of the evidence that the burden was met. And although the trial court was not bound to follow the recommendation of the GAL, the court in this case appeared to be particularly focused on the child's relationship with her half-siblings, which is secondary to a parent's fundamental interest in raising his or her biological child. While a parent's interest is not absolute, we cannot say that the evidence presented supported a finding of paternal unsuitability.

{¶36} We conclude that the trial court's judgment holding that an award of legal custody to Grandmother would be detrimental to the child is against the manifest weight of the evidence. We reverse the trial court's judgment awarding legal custody of the child to Grandmother and remand this matter to the trial court for further proceedings including a new trial on the issue of legal custody of Z.P. *See In re A.C.*, 6th Dist. Lucas

No. L-11-1129, 2012-Ohio-826, ¶ 33 (court remanded case for a new trial when judgment awarding legal custody to maternal grandmother instead of mother was against the manifest weight of the evidence).

**{¶37}** The second assignment of error is sustained.

**{¶38}** Judgment reversed.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

TIM McCORMACK, P.J., and
ANITA LASTER MAYS, J., CONCUR