[Cite as *In re R.V.*, 2021-Ohio-1830.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: R.V. | : | APPEAL NO. C-200170<br>TRIAL NO. F18-1548Z |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 28, 2021

*Law Office of Laurie B. Gibson, LLC*, and *Laurie B. Gibson* for Appellant
Father.

**WINKLER, Judge.**

{¶1} Appellant father appeals a decision of the Hamilton County Juvenile Court granting custody of his daughter R.V. to appellee the child's maternal great-aunt. Great-aunt did not appear in this court. We find merit in father's single assignment of error, and we reverse the juvenile court's judgment.

{¶2} R.V. was born on July 17, 2013. She lived with her mother and her half-sister until the three of them moved in with great-aunt due to mother's illness. Mother passed away on October 17, 2018, after a failed heart transplant.

{¶3} On October 23, 2018, great-aunt filed a petition for custody and a petition for emergency custody. The juvenile court denied the petition for emergency custody because the child was already living with great-aunt and there was no risk of imminent harm. The court ordered a custody investigation and set the matter for hearing on January 14, 2019. It further stated that paternity had not been established but that there was an alleged father who had to be served.

{¶4} At the January 14, 2019 hearing, the court granted interim custody to great-aunt. Father appeared at the hearing. The court ordered him to establish paternity. On June 28, 2019, father presented the results of genetic testing. The juvenile court adjudicated him the child's father, and ordered visitation with father. Interim custody remained with great-aunt. Father filed a petition for custody on October 14, 2019.

{¶5} Hearings on the petitions for custody were held on October 28, 2019, and February 12, 2020. The evidence showed that the court investigator had recommended that the court grant custody to great-aunt. The investigator's primary concern was the child's relationship with her half-sister. The sisters had gone through a lot of trauma together due to their mother's illness and death. They were

2

very close and did everything together. They had a stable home and routine while living with great-aunt. The investigator believed that it would be traumatizing to separate the sisters and that separation was not in the child's best interest.

{¶6} Great-aunt stated that under the interim order of visitation, father should have had 57 visits, but he only visited 13 times. Nevertheless, the investigator stated that great-aunt "was very open about the fact that [father] visits R.V. as much as he can." Additionally great-aunt said that she "turned him away" three times because the child had a birthday party or other event planned.

{¶7} Father stated that when he missed visiting on specific days, he would make arrangements to see the child at other times. According to the investigator, great-aunt stated that "he has always been a great father in her life." There were "never any concerns" about father other than the fact that he works a lot. The investigator also stated that "I do know that [father] wants to be a dad and wants to be a good father to R.V., and it's just how do you divvy up your time."

{¶8} At the time of the investigation, father worked Monday through Friday from 6:45 a.m. to 6:00 p.m. He had to work a mandatory 50 hours per week. He also worked part time on weekends for his own moving company. Later in the proceedings, father stated that he was able to cut down on his hours at work. Father stated that if he obtains custody, he has a cousin who could watch the child in the mornings when he goes to work.

{¶9} Father has five other children that he visits and supports. At the start of the proceedings, he lived with his girlfriend and two of his other children. He did not have an apartment in his own name because he had difficulty getting an apartment due to his lack of a rental history. Later, he obtained a two-bedroom apartment in his own name that had room for R.V. to live with him.

{¶10} Father believes that as the child's only living parent, he has a responsibility to take care of his daughter. He acknowledged that great-aunt has done "a great job" caring for the child. He testified that he and his daughter have a good time when they are together and that he believes R.V. loves him. Father observed that R.V. does not always seem like she wants to be around him, and he feels that he needs custody so that he and R.V. can continue to build a stronger bond.

{¶11} Great-aunt testified that father was a "great man." She stated that when father brought dinner for R.V., he also brought food to feed the other children and relatives living in great-aunt's home. When asked why she thought father should not have custody of the child, she stated that she felt that father did not have the time for her, and "it's all about keeping the girls together." She added that shortly after the child's mother had died, her grandmother also passed away. Given the support system the child had at home with great-aunt, her half-sister, and her school, great-aunt believed that such a big transition would be "devastating" for the child.

{¶12} The magistrate issued a decision finding father to be unsuitable. The magistrate stated that "[it] is unclear when and how much time Father has spent in the child's life since she was born in 2013." The magistrate further stated that "Father's work schedule prevents him from even establishing a relationship with [R.V.]. Father has been honest about his situation as to doing what is right for [R.V.]." The magistrate found that father had "abandoned the care of his child to [great-aunt] for at least from the time of Mother's death up until the date he filed for custody." The magistrate determined that it was in R.V.'s best interest to grant custody to great-aunt.

{¶13} Father objected to the magistrate's finding that he was not a suitable parent. At a hearing on the objection, the juvenile court heard further testimony. Father argued that there was insufficient evidence to support the magistrate's finding

that he was unsuitable. His counsel stated that he is "very grateful" for all that great-aunt has done, and he wanted great-aunt to continue to be a part of R.V.'s life. But father had "no legal say whatsoever in his child's life. He has no legal decision-making rights * * *." His counsel further said that father "is interested in proposing some type of * * * a joint-custody situation acknowledging the love and the nurturing and the relationship with the [great-aunt] and the child."

{¶14} The juvenile court rejected the magistrate's finding that father had abandoned the child, stating it was not supported by sufficient evidence. But it determined that father was unsuitable because placement of the child with father would be detrimental to her well-being. It reasoned that placement with father would (1) subject the child to "the additional trauma of being separated from a sibling to whom she has bonded"; (2) upset "the balanced routine that has helped her remain safe and healthy" since her mother's death; (3) mean that R.V. would be "routinely cared for by people who will largely be strangers to her; and (3) force R.V. to transfer schools.

{¶15} The juvenile court determined that it was in the child's best interest to grant custody to great-aunt and affirmed the magistrate's decision. Nevertheless, it added that "given the positive nature of the relationships in this instance, the Court would strongly urge Father and Maternal [great] Aunt to talk and come up with a private parenting time agreement." This appeal followed.

{¶16} In his sole assignment of error, father contends that the trial court erred in granting custody to a nonparent. He argues that evidence was insufficient to show that he was not a suitable parent. This assignment of error is well taken.

{¶17} We review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, ¶ 3. An abuse of discretion is more than an error of law or judgment. It is

a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *In re H.J.H.* at ¶ 3. A trial court's decision that is not supported by competent, credible evidence is unreasonable and may be reversed. *In re H.J.H.* at ¶ 3; *In re Wilkenson*, 1st Dist. Hamilton Nos. C-010402 and C-010408, 2001 WL 1220026, *1 (Oct. 12, 2001).

{¶18} Because parents have a fundamental interest in the care, custody and management of their children, a finding of parental unsuitability is a necessary first step in child-custody proceedings between a natural parent and a nonparent. *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16-18; *In re Perales*, 52 Ohio St.2d 89, 97-99, 369 N.E.2d 1047 (1977); *In re H.J.H.* at ¶ 3. Only if the trial court determines that the parent is unsuitable, should it then examine which custodial placement would be in the best interest of the child. *In re H.J.H.* at ¶ 4.

{¶19} Unsuitability as a parent is established if (1) the parent has abandoned the child, (2) the parent contractually relinquished custody of the child, (3) the parent has become incapable of supporting or caring for the child, or (4) an award of custody would be detrimental to the child. *In re Hockstock* at ¶ 17; *In re Perales* at syllabus. If the court determines that any one of these circumstances describes a parent's conduct, the parent may be adjudged unsuitable. *In re Hockstock* at ¶ 17.

{¶20} Nevertheless, "[b]iological parents have a fundamental liberty interest in the care, custody and management of their children and a finding of parental unsuitability is not to be made lightly." *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, at ¶ 5, quoting *In re Z.P.*, 2017-Ohio-7397, 96 N.E.3d 1115, ¶ 31 (8th Dist.). The nonparent bears the burden to show parental unsuitability. *In re H.J.H.* at ¶ 10.

{¶21} The juvenile court determined that father was unsuitable because an award of custody to him would be detrimental to the child. Courts have found

detriment to the child in cases of serious problems with a parent, such as where a parent has exposed a child to verbal and physical abuse, the parent has a history of psychological and behavioral problems, the child was in a chaotic environment filled with domestic violence, and where the child had animosity towards the parent that caused mental and physical problems. *In re H.J.H.* at ¶ 7; *In re Davis*, 7th Dist. Mahoning No. 02-CA-95, 2003-Ohio-809, ¶ 27. "While an award of custody may have a detrimental effect on a child, a child being moved from her home, by itself, is not the sort of detriment that rises to the level of rendering a parent unsuitable." *In re H.J.H.* at ¶ 7.

{¶22} The evidence in this case does not rise to the level to show that father was unsuitable. He loves his daughter and clearly wants what is best for her. He has stable housing and income, and even great-aunt acknowledged he was a good father. She "repeatedly emphasized Father's kind heart and willingness to help with the child." Father visits and supports his other children. Though his work schedule presented problems, he stated that he had reduced his hours at work, and he had the support of his family.

{¶23} Both the magistrate and the juvenile court judge relied heavily on father's statement to the custody investigator to the effect that it was in the child's best interest to remain with great-aunt. But the record shows, and the investigator acknowledged that, father desired custody of his daughter. The court misinterpreted father's desire for R.V. to maintain contact with great-aunt and her half-sibling as indicating that he wanted great-aunt to have custody.

{¶24} The juvenile court actually engaged in a best-interest analysis under the guise of finding father unsuitable. "Simply because one situation or environment is the 'better' situation does not mean that the other is detrimental or harmful to the child." *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, at ¶ 13. The

7

trial court's main concern was separating R.V. from her half-sister. But father recognized it would be harmful to separate the siblings.

{¶25} Given the good relationship between the parties, we encourage them to determine a way to transition the child so that the change of custody would not be traumatic for the child and that her relationship with her sister would be continued. We echo the trial court's statement encouraging the parties to continue their good relationship and come to an agreement about parenting time.

{¶26} The juvenile court's finding that awarding custody to father would be detrimental to the child so as to render father unsuitable was not supported by competent, credible evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *In re H.J.H.* at ¶ 16. Consequently, the juvenile court abused its discretion in awarding custody to great-aunt. We sustain father's assignment of error, reverse the juvenile court's judgment, and remand the cause for the court to award custody to father and to determine an appropriate visitation schedule.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **HENDON**, **J.,** concur.

SYLVIA S. HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:
     The court has recorded its own entry this date.